## Louisville Railway Company v. Frick.

(Decided April 21, 1914.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1.  Assault and Battery—Action for—Evidence—Instructions.—In an action by a passenger against a street railway company for damages for an assault upon him by its conductor, the defense being that the conductor used his ticket punch in his necessary self defense, the jury should have been told that the plaintiff could not recover for injuries resulting from such use of the punch as was necessary in the conductor's self defense. The instruction authorizing a recovery for all injuries received was erroneous.

2.  Assault and Battery—Assault by Passenger Upon Conductor of Street Railway.—The mere fact that one is a conductor and owes to passengers in his car the duty of protection, does not warrant a passenger in making an assault upon him, although the passenger may have been provoked by the conductor's insulting language.

3.  Assault and Battery—Action by Passenger Against Street Railway Company for Assault by Conductor—Instructions.—In an action for assault and battery by a passenger against a street railway company for an assault by its conductor, the defense being that the conductor struck with his punch in self defense, the instruction as to compensatory damages should have limited the recovery to such pain and suffering, mental and physical, if any, resulting directly from the unnecessary striking, if any, by the conductor.

4.  Assault and Battery—Action Against Street Railway Company for Assault by Conductor Upon a Passenger—Punitive Damages.—In an action by a passenger against a street railway company for damages resulting from an assault upon him by the conductor of the car, evidence examined and held to warrant the giving of an instruction upon punitive damages.

5.  Trial—Evidence Upon Collateral Matter.—It is the duty of the court to confine the evidence to matters pertaining to the issue. Testimony relating to collateral matter should be rejected.

FAIRLEIGH, STRAUS & FAIRLEIGH and HOWARD B. LEE for appellant.

O'DOHERTY & YONTS, HENRY W. SANDERS and JOHN S. MILLIKEN for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This is an appeal from a judgment for $5,000.00 in favor of the appellee, Frick, against the Louisville Railway Company. The appellee sued for $25,000, and his petition is in two paragraphs, the first alleging assault and battery, and the second alleging insult and abusive treatment. The wrongs complained of were the acts of appellant's conductor, Upton, and they were all part of the same altercation, and occurred practically at the same time. It is for this reason no doubt that the lower court treated the two paragraphs as one cause of action, that is, an action for assault and battery, the alleged insult and abuse being but incidental to it. The appellant's defense was justification. It claimed that Frick was the aggressor, and that its conductor acted in his necessary self-defense, and not otherwise.

Frick was a passenger on a south bound Fifth street car. He got aboard at Fifth and Main intending to go to the Crescent Bath House at Fourth and Walnut. When the car reached Fifth and Jefferson, it was halted by reason of the fact that an automobile parade was moving on Jefferson street. Frick claims that two other street cars, and a delivery wagon, going in the same direction were halted between his car, and the parade on Jefferson. He says that from time to time, as there were openings in the parade, these other cars, and the delivery wagon, pushed through, but that the conductor, Upton, made no real effort to go through. The conductor says he was unable to get through, and in fact, he was not allowed to do so, and denies that there were any cars, or vehicles ahead of him, or that any went through the parade. Anyhow, Upton's car was held for a considerable time, and appellee became very impatient at the delay. More than once words passed between the appellee and the conductor with reference to it; Frick insisting that the conductor have his motorman work through the parade, and the conductor contending that the motorman could not get through. Stronger language than this was used, and the delay did not seem to give to the parties any clearer understanding, or kindlier appreciation of the motives and wishes of the other. On the contrary the breach between them widened, and they soon came to blows. Frick's version of what occurred immediately previous to the blows is as follows:

"We sat there quite a while after that, and I wondered when our car might start. It dawned on me that

I didn't have far to go. I was going to Fourth and Walnut, and I would get out and walk. I got up from my seat and started to the rear of the car and I met the conductor in the aisle of the car, and I asked him, I said, 'Why don't you try to get through the parade like those other people did ahead of you?' he said, 'None of your damn business.' "

The conductor says that he was not in the aisle of the car, but standing at his place on the platform within the railing, near the cash box, when appellee came to the exit door, and asked the conductor to push through the parade, and declining to do so Frick addressed to him a vile epithet, and at the same time struck the conductor a blow in the face with his fist. Frick admits attempting to strike the first blow, but he says it was only an attempt as he failed to reach the conductor, but he denies addressing the vile epithet to the conductor, and says that it was only when the conductor so addressed him that he, Frick, struck, or attempted to strike the first blow. From this point there is very little disagreement as to what occurred. When Frick attempted to strike him, the conductor grabbed the striking hand, and with his ticket punch in his right hand, immediately struck Frick a heavy blow with it under his eye. With four or five other blows on the head, he beat Frick into a dazed condition down on a seat near the end of the car. As soon as the parties came to blows, the attention of two other passengers was attracted, and they came to Frick's relief. They pulled the conductor off of Frick, and delivered him over to the police. One of these witnesses says:

"When I first saw the trouble, the conductor was standing over Frick, hitting him in the face, and on the top of the head, and Mr. Frick put his hands in front of his face, and then he would hit him on the head, and if he put his arms this way (indicating) he would hit him in the face. * * * I thought it was some brass-knucks, when I first looked, but I saw afterwards it was his punch, and he was standing over Mr. Frick, and struck him in the face several times, and he struck him in the head three or four times there, and every time he struck him in an awfully brutal manner, and each time the blood would come * * * every time the blood would come. Mr. Frick just stood there—I mean he just sat there, and threw up his arm that way (indicating), and

he tried to ward it off, and then he would hit over his arm, and he kept on hitting. * * * I first saw him (conductor) on the platform, and the next time I saw him, he was standing over Mr. Frick hitting him, and I went up and hollered at the conductor, and interceded in Mr. Frick's behalf, and he turned at me, and, to tell you the truth, I was afraid he was going to hit me; he was so mad. Yes, sir; he looked like he was wild.''

As above indicated, it is a question of veracity between Frick and the conductor, Upton, as to what occurred before the blows. The nature and character of the blows, and the intention of the conductor was established by reputable and disinterested witnesses. Frick was seriously and painfully injured. He was in the hospital for a time, and there is some paralysis in the lower lid of one eye, and in the muscles of his lower lip causing a permanent facial deformity. Upon this state of facts the court gave to the jury the following instructions:

## INSTRUCTION NO. 1.

''Words do not justify an assault, and neither the plaintiff nor the conductor in this case had the right to strike the other because of any words that were used by either. It appears in this case that the plaintiff, Charles P. Frick, attempted to strike the conductor, W. W. Upton, and I instruct you that the law of the case is for the defendant and you should so find unless you believe from the evidence that the conductor used more force than was reasonably necessary or to him apparently reasonably necessary to repel the assault on him by the plaintiff, or to defend himself from assault by the plaintiff; but if you believe from the evidence in the case that the conductor used more force than was reasonably necessary or to him apparently reasonably necessary to ward off and defend himself from the assault of the plaintiff, Charles P. Frick, then the law of the case is for the plaintiff and you should so find.''

## INSTRUCTION NO. 2.

''If you find for the plaintiff, you will award to him such sum in damages as you believe from the evidence will reasonably and fairly compensate him for his pain and suffering, mental and physical, if any, resulting to him directly from the striking of him by the conductor in the testimony referred to, not to exceed the sum of $25,000.00; and if you believe from the evidence that the

conductor used more force than was reasonably necessary or to him apparently reasonably necessary, to ward off or defend himself from the assault of the plaintiff, Frick, and if you further believe that in doing so he acted in a willful, wanton and oppressive manner, then you may or may not, in your discretion, in addition to the compensatory damage hereinbefore referred to, award to the plaintiff such sum by way of exemplary or punitive damage as you believe from the evidence is right and proper under all the testimony in this case. Your verdict in all not to exceed the sum of $25,000.00, the amount prayed for in the petition.

If you find for defendant, you will say so by your verdict, and no more.''

Appellant complains that instruction number two as to compensation was erroneous in that the jury was allowed to assess damages for *all* the injuries received by appellee instead of being restricted to damages for only such injuries as were received as a result of the force used by the conductor, if any, in excess of what was necessary to defend himself.

In the recent case of Romans v. McGinnis, 156 Ky., 205, (decided since the case at bar was tried) we had under consideration a similar question. A peace officer was sued for assault and battery growing out of his making an arrest, and in justification it was claimed that the plaintiff resisted arrest, and assaulted the officer. We held that the arrest was lawful, but that the officer was only liable for any *unnecessary* force used in attempting to effect the arrest, or in attempting to repel the assault of the plaintiff. The instruction in that case was similar to the one here, and in discussing it the court said:

''This instruction is erroneous in that it allows a finding for all the mental and physical suffering of plaintiff resulting from the beating, bruising and wounding of plaintiff by defendant Romans. It should have allowed recovery for only such mental and physical suffering as resulted from such beating, bruising and wounding as was in excess of what was necessary to be inflicted by defendant Romans, in order to effect the arrest; or to retain plaintiff in his custody after the arrest was effected; or to repel any assault by said plaintiff, upon defendant Romans.''

While in the case at bar the court, by the first instruction, denied Frick the right to recover anything unless the jury believed that the conductor used more force than was reasonably necessary, or to him apparently reasonably necessary to repel the assault made on him by the plaintiff, or to defend himself from such an assault, yet by the second instruction the jury was told that if they did find for the plaintiff they would find for him such damages as resulted to him "directly from the striking of him by the conductor in the testimony referred to." By these instructions Upton's right of self-defense is recognized, but, having such right, clearly neither he or his employer can be called upon to respond in damages resulting from the exercise of it. From the language of instruction number two, the jury were authorized to conclude that if the conductor used more force than was necessary in the exercise of his right of self-defense, he then became a wrongdoer from the beginning, and the company must respond in damages for *all* the injuries he received, both as a result of the conductor's act in defending himself as well as from the blows delivered by him after his self-defense was secured.

Appellee recognizes the force of appellant's objection to the instruction, but insists that all the injuries received by Frick were the result of excessive force used by the conductor, for, as he says, when the conductor grabbed Frick by the arm, he was then secure in his defense, and from that time Frick was helpless and powerless, therefore, he argues, that there was no need in this case for the application of the rule stated in the Roman's case. When we come to consider that although Frick was 58 years of age, he was apparently a much stronger man than the conductor. He weighed 185 pounds, while the conductor weighed but 130 pounds. Appellee contends that appearances in this case were deceptive, but there is nothing in the record to show that Frick was not as strong as he seemed to be, at least there is not brought home to Upton such knowledge as to deprive him of his right to defend himself from Frick's apparent overpowering strength.

Appellee had struck, or struck at Upton with one hand, and there was nothing to indicate to Upton that he was not prepared to, and did not intend to follow it up with the other hand. To put it most favorably to

appellee, it should be left to the jury to decide whether Upton's first, or other licks with the ticket punch were necessary in his self-defense. If any were necessary, then the jury should be told that he could not recover for injuries resulting from such as were necessary. Appellee resists the application of the rule in the Romans case for another reason. He says that Romans was a police officer, and as. such it was his duty to make the arrest, and also to use such force as was reasonably necessary to accomplish it, while in the case of a conductor, he owes a duty to protect a passenger both from insult and assault. These general statements as to the duties of police officers and conductors are undoubtedly correct, but in addition to the duties they owe, they also have some rights which they may exercise, and one right which is common to both is that of self-defense. The mere fact that one is a conductor, and owes to passengers in his car the duty of protection, does not warrant a passenger in making an assault upon him, although the passenger may have been provoked by the conductor's insulting language. His remedy is an action for the insult rather than an assault upon the conductor.

We are of opinion that that part of instruction number two relating to compensatory damages should have limited the recovery to such pain and suffering, mental and physical, if any, resulting to him directly from the unnecessary striking of him, if any, by the conductor.

After a careful consideration of the facts of this case, we have reached the conclusion that they warrant the giving of an instruction on punitive damages. Appellant further contends that the instruction on punitive damages is incorrect in that it did not tell the jury that matters of provocation were to be considered in mitigation of such damages. The matters of provocation referred to consist of the assault made, and the alleged insulting words, and the abusive epithets addressed by the appellee to the conductor. Section 73-a of the Kentucky Statutes (1906 Amendment) authorizes the defendant to plead as a defense to the claim for punitive damages any provocation which preceded the assault. In the third paragraph of appellant's answer, and which constitutes its whole defense, it says of the appellee, "that after boarding said car he conducted himself in a disorderly manner, and cursed and abused the conductor who was its agent on said car, and assaulted said con-

ductor, etc." Appellant insists that the court erred in failing to instruct the jury that they might consider the proof heard in support of this plea by way of mitigation of punitive damages. Since by the statute one may plead matters of provocation by way of mitigation, and when there is such a plea, and proof has been heard in support of it, we think it the duty of the court to instruct the jury with reference to it.

Renfrow v. Barlow, 131 Ky., 312.

Appellant calls attention to this language in instruction number one: "It appears in this case that the plaintiff, Charles P. Frick, attempted to strike the conductor." It is claimed the court erred in the use of this language because it assumed the statement of appellee as to this fact to be true, that is, that he only attempted to strike the conductor. Appellant argues that by assuming appellee's statement of this occurrence as true, the jury necessarily inferred that, in the opinion of the court, the conductor's statement was false. It requires a strained construction of the court's language to agree with the appellant. The jury could have just as well put another construction upon it more favorable to appellee. In effect, the court gives Upton the right of self-defense although appellee only attempted to strike him. If, in fact, he did strike him, Upton's right of self-defense is all the more pronounced. Certainly there was no error here prejudicial to appellant, but on a retrial the court may let the instruction read: "It appears in this case, that the plaintiff, Charles P. Frick, either struck or attempted to strike the conductor, W. W. Upton, etc."

Appellant's final complaint is that the court refused permission to contradict appellee upon a collateral matter. After denying that he addressed the vile epithet to the conductor, Frick's counsel asked him if he ever used that sort of language. His answer was, "No, sir; I am not in the habit of using that sort of language unless I might be extremely provoked, but I did not in this instance." There was no objection to this question or answer. On cross-examination appellant's counsel asked Frick this question. "I will ask you if sometime ago, in Sullivan and Brack's saloon, if you did'nt apply that epithet to Doctor Carl Weidner?" Frick's counsel objected, and the court sustained the objection. Appellant's counsel made an avowal, that at the time and place, Frick did so curse Doctor Weidner, and a fight

would have ensued had not friends interfered. The court was exactly right in rejecting this testimony. In the first place Frick did not deny that on some occasions he might use such language, therefore, there was nothing to be contradicted. Moreover, counsel cannot by failure to object, render competent evidence of controversies and altercations having no connection with the one on trial. It is the duty of the court to confine the evidence to matters pertaining to the issue. The time of the court is too valuable, and the demands of other. litigants too pressing for courts to be burdened by collateral matters.

On a retrial the court will give to the jury instruction number one, corrected as above indicated, and in lieu of instruction number two the following instructions should be given:

## INSTRUCTION NO. 2.

If you find for the plaintiff you will award to him such sum in damages as you believe from the evidence will reasonably and fairly compensate him for his pain and suffering, mental and physical, if any, resulting to him directly from the unnecessary striking of him defined in instruction No. 1, by the conductor, not to exceed the sum of $25,000.

## INSTRUCTION NO. 3.

If you further believe from the evidence that the conductor used more force than was reasonably necessary, or to him apparently reasonably necessary to ward off, or defend himself from the assault of the plaintiff, Frick, and if you further believe that in doing so he acted in a wilful, wanton and oppressive manner, then you may, or may not, in your discretion, in addition to the compensatory damages before referred to, award the plaintiff such sum by way of exemplary or punitive damages as you believe from the evidence will be just and reasonable for the unnecessary force, if any, used by the conductor, Upton, on the plaintiff, but in no event shall your finding, if any, in both compensatory and exemplary damages exceed the sum of $25,000, the amount claimed in the petition.

## INSTRUCTION NO. 4.

If, however, you believe from the evidence that the plaintiff gave to the conductor, Upton, such provocation to use more force than was reasonably necessary, or to him apparently reasonably necessary to defend himself .from the assault made upon him by the plaintiff, as would cause an ordinarily prudent man under like or similar circumstances so to use more force than was necessary to defend himself from such an assault as that made by plaintiff upon the conductor, Upton, and, that such provocation, if any, prompted defendant to so use such excessive force, then in that event, you may consider such provocation, if any, in mitigation of punitive damages you may find for the plaintiff, if any.

## INSTRUCTION NO. 5.

If you find for the defendant, you will so say by your verdict, and no more.

For the reasons stated the case must be reversed, and it is so ordered.